The plaintiffs, who leased premises owned by the defendants and operated a business known as Ice Cream Smuggler, appeal from a judgment dismissing their complaint pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974).[4] The plaintiffs allege that the defendants breached the lease by (1) refusing to honor the plaintiff's election to purchase the property, and (2) leasing the premises to a competitor. For the following reasons we affirm the judgment.
We review de novo the allowance of a motion to dismiss under rule 12(b)(6). See Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011). "For purposes of such review, we accept[ ] as true the facts alleged in the plaintiff['s] complaint and exhibits attached thereto, and favorable inferences that reasonably can be drawn from them." Goodwin v. Lee Pub. Schs., 475 Mass. 280, 284 (2016). We need not accept as true "legal conclusions cast in the form of factual allegations." Leavitt v. Brockton Hosp., Inc., 454 Mass. 37, 39 n.6 (2009). To survive a motion to dismiss, "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." Iannacchino v. FordMotor Co., 451 Mass. 623, 636 (2008), quoting from Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).
The plaintiffs first argue that the judge improperly decided the motion to dismiss without allowing the parties to conduct discovery. The argument fails. The allegations of the complaint, taken together with the documents attached thereto, provide all of the information necessary to determine that the plaintiffs' claims fail as a matter of law.
We also reject the plaintiffs' assertion that the electronic mail message (e-mail) sent by defendant Hassett to the plaintiffs on January 11, 2014, triggered the plaintiffs' right to purchase the property under paragraph twenty of the lease. That paragraph provides that if the defendants "elect to sell the property ... they shall first offer the property to" the plaintiffs. If the plaintiffs "elect to purchase the property, they must respond in writing within twenty-one days." The January 11, 2014, e-mail sent by Hassett to the plaintiffs addressed a range of topics concerning the property, including repairs and improvements to the premises, before stating that Hassett had "revisited the possible sale of the building to [the plaintiffs] with [her] financial advisors," observed that "[t]here are several factors that play into this," and concluded with the comment, "[s]o that you do not have to pay to have another unrealistic offer prepared professionally the figure I will need to have is $480,000." Contrary to the plaintiffs' claims, the January 11 e-mail did not constitute an offer or a firm intent to sell the premises; at most it expressed an interest in exploring discussions toward a possible sale.[5]
Even were we to treat the January 11 e-mail as an offer to sell the premises within the meaning of paragraph twenty of the lease, the plaintiffs' response did not operate to exercise the option to purchase. The plaintiffs' response included a term sheet, setting forth a purchase price, a down payment, and an amount of mortgage financing to be provided by the defendants. The purchase price was more than twenty-five percent lower than the amount Hassett's e-mail had described as the amount she "would need to have." Though the complaint asserts that the plaintiffs had performed an appraisal of the property, nothing in the plaintiffs' response refers to an appraisal or, for that matter, to the provisions of paragraph twenty of the lease. The response did not state in any manner that it constituted an exercise of the right to purchase described in paragraph twenty of the lease; indeed, the term sheet began with language in bold type expressly disclaiming any such effect:
"This [t]erm [s]heet is not an offer or contract and is solely intended to set forth possible terms for the proposed transaction. It is not binding on either party and creates no legal rights duties or obligations, express or implied."
After sending that response, the plaintiffs took no further steps consistent with treating the communications as an exercise of the option until they filed their complaint in the present action.[6] The motion judge properly dismissed the plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing.
We likewise discern no error in the motion judge's dismissal of the plaintiffs' claims for promissory estoppel or interference with advantageous business relations, for substantially the reasons stated by the motion judge in his memorandum of decision.[7]
Judgment affirmed.

The complaint asserted claims for declaratory relief, breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and interference with an advantageous contractual relationship.

We note as well that the e-mail did not conform to the provisions of the lease requiring that any offer to sell the premises must be sent by certified mail, return receipt requested.

For example, there is no indication in the complaint that the plaintiffs pressed the defendants to select a certified appraiser in the manner contemplated by paragraph twenty.

Following the correspondence described above, the parties engaged in negotiations toward a new lease. Those negotiations eventually broke down and, in 2016, the defendants leased the premises to one of the plaintiffs' competitors. As the motion judge observed, the on-again, off-again, course of communications toward a possible new lease, as alleged in the complaint, furnished no basis for reasonable reliance on any implicit promise that the defendants would lease the premises to the plaintiffs upon expiration of the then-current term. See Rhode Island Hosp. Trust Natl. Bank v. Varadin, 419 Mass. 841, 848 (1995). Additionally, there is no assertion in the complaint, beyond mere speculative allegations, that the defendant Sanchez acted with an improper purpose or motive to constitute an interference with an advantageous business relationship by negotiating a lease of the premises with a friend and competitor of the plaintiffs. See United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812 (1990).